891 F.2d 294
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Randolph C. BENTLER, Plaintiff-Appellant,
v.
BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Bank
of America Corporation, Defendants-Appellees.
 No. 88-6271.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1989.
Decided Dec. 6, 1989.
 
 Before GOODWIN, Chief Judge, SCHROEDER and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Randolph Bentler appeals the district court's orders granting summary judgment to BankAmerica Corporation ("BAC") and partial summary judgment to Bank America National Trust and Savings Association ("the Bank") on his age discrimination and common law claims arising out of his employment termination. We affirm.
 
 
 3
 * From 1962 to 1986, Randolph Bentler worked his way up from trainee to Vice President of the Bank of America. The Bank replaced him in 1986 with a younger man, and it informed him that his employment would terminate if he did not accept a transfer from Los Angeles to San Francisco. Because of a child custody order which required that Bentler live in proximity to his ex-wife and children in southern California, he did not move to San Francisco, and his employment terminated.
 
 
 4
 Bentler filed a complaint against BAC and the Bank in California state court alleging age discrimination in violation of both the Age Discrimination in Employment Act, 29 U.S.C. § 621, and the California Fair Employment & Housing Act, California Government Code § 12940. The complaint also asserted that appellees breached an oral contract of employment, breached an implied covenant of good faith and fair dealing, and intentionally or negligently inflicted emotional distress. The Bank removed the case to the district court.
 
 
 5
 The district court determined that BAC did not employ Bentler and granted BAC's motion for summary judgment on all counts. In addition, it awarded partial summary judgment in favor of the Bank on Bentler's non-statutory claims on the ground that they were preempted by the National Bank Act's employment at will provision. 12 U.S.C. § 24 (Fifth) (1982).
 
 II
 
 6
 We have jurisdiction over the summary judgment orders pursuant to the district court's certifications of final judgment under Rule 54(b) of the Federal Rules of Civil Procedure. Bentler also asks us to examine the district court's denial of his demand for a jury trial, even though the trial court did not certify that order as final. Because orders striking jury demands are non-appealable interlocutory orders, we do not have jurisdiction to review them. Morgantown v. Royal Ins. Co., 337 U.S. 254 (1949); Cochran v. Birkel, 651 F.2d 1219, 1221 (6th Cir.1981), cert. denied, 454 U.S. 1152 (1982) ("It is firmly established that denial of a jury demand is a nonappealable interlocutory order"); C. Wright & A. Miller, Federal Practice and Procedure § 2322 (1971); J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice p 39.13 (2d ed. 1988).
 
 
 7
 Appellant suggests that appeal is appropriate under the collateral order doctrine first expressed in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949). We disagree. See Howard v. Parisian, Inc., 807 F.2d 1560, 1566 (11th Cir.1987). The Supreme Court has stressed that the Cohen doctrine is a narrow exception for a small class of cases and has cautioned against "succumb[ing] to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation." Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 440 (1985), quoting Bachowski v. Usery, 545 F.2d 363, 373-374 (3rd Cir.1976). We see no reason to extend Cohen to the denial of jury demands.
 
 III
 
 8
 The district court ruled that there was no genuine issue regarding whether BAC employed Bentler. It determined that BAC was not a party to Bentler's employment contract and that BAC and the Bank did not operate as a single employer. We agree.
 
 
 9
 * Bentler's 1962 employment contract expressly stated that he was employed "by the Bank of America National Trust & Savings Association and/or affiliations thereof." Appellees concede that BAC is an "affiliation" of the Bank. However, they argue that the contract provision should not render BAC an employer of Bentler because 1) Bentler stated in a deposition that he was employed by the Bank, and not by BAC, 2) the parties intended that the contract provision apply only to formal transfers to other companies, and 3) BAC did not come into existence until 1968. These arguments will be addressed in turn.
 
 
 10
 First, we have held that statements of legal conclusions by parties in depositions do not have a dispositive effect on motions for summary judgment. Salgado v. Atlantic Richfield Co., 823 F.2d 1322, 1327 (9th Cir.1987) (court instructed district court to disregard plaintiff's legal characterization of his discharge in his deposition). Therefore, Bentler's statements, that he did not have direct dealings with BAC and that he was employed by the Bank rather than BAC, ought not have a conclusive effect on BAC's motion for summary judgment.
 
 
 11
 BAC's second argument, that the contract provision was only intended to apply to formal transfers, is not supported by the record.
 
 
 12
 However, BAC's third argument, that it did not come into existence until six years after the parties signed the contract, amply supports its contention that it was not a party to the contract. Bentler provided no evidence that BAC assented to the Bentler-Bank contract, and he did not prove that the Bank had power to bind a non-existing corporation in the 1962 agreement.
 
 B
 
 13
 Even though BAC was not a party to the 1962 employment contract, it may still be held liable for the employment decisions of its subsidiary if BAC and the Bank functioned as a single employer. We employ different tests for single employer status than the tests employed by California state courts. Although the district court did not explicitly apply this circuit's single employer test to Bentler's federal claim, it nonetheless correctly concluded that BAC did not employ Bentler.
 
 
 14
 * Our test for determining whether two businesses should be treated as a single employer looks for evidence of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. Morgan v. Safeway Stores, Inc., No. 88-1785, slip op. 10860 (9th Cir. Sept. 6, 1989) (applying test to a Title VII claim), citing Childs v. Local 18, Int'l Brotherhood of Electrical Workers, 719 F.2d 1379, 1382 (9th Cir.1983) (same); see also NLRB v. Carson Cable TV, 795 F.2d 879 (9th Cir.1986) (applying the test to the National Labor Relations Act, 29 U.S.C. § 152(2)). Although Bentler alleges age discrimination, the Title VII and National Labor Relations Act decisions are nonetheless persuasive. See e.g., Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979) (construing the ADEA in accord with Title VII).
 
 
 15
 The record contains some evidence, albeit insufficient, concerning whether BAC and the Bank function as a single employer. First, the Bank's Operating Plans have urged Bank employees to link their daily actions to BAC's vision, value and strategies, indicating that the operations are somewhat interrelated. Second, since some BAC officers concurrently serve as Bank officers, there is evidence of common management.
 
 
 16
 Third, Bentler argues that BAC exercises control over the Bank's employment practices. He refers to documents which describe employees of the Bank as BAC employees. In addition, he argues that a BAC officer creates, reviews, and implements personnel policies for both BAC and the Bank. Finally, no one denies that there is common ownership because the Bank is a wholly-owned subsidiary of BAC.
 
 
 17
 BAC counters that it is common for a parent's name to appear on documents of subsidiaries even when the two function as separate employers. In addition, it points out that the BAC officer who creates personnel policies does so in the capacity as a Bank officer. Moreover, BAC maintains that the subsidiaries are not bound by BAC policies, and that they do not uniformly follow them.
 
 
 18
 We agree with appellees and conclude that there is little more than a normal parent-subsidiary relationship between BAC and the Bank. After applying our four-part test to Bentler's federal claim, we simply do not find enough evidence that BAC and the Bank operate as a single employer for us to pierce the corporate veil in this case.
 
 2
 
 19
 Bentler does not satisfy the requirements of the California single employer test either. The trial court properly applied the somewhat more stringent test of Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc., 116 Cal.App.3d 111, 172 Cal.Rptr. 74 (1981), to the pendent state claims. California courts determine whether a parent exercises "manipulative control" over its subsidiary, and whether the subsidiary is a "mere instrumentality" of the parent. Id. at 119, 120. The question is one of fact. Id.
 
 
 20
 Bentler's allegations do not raise a genuine factual issue concerning the "mere instrumentality" test for single employer status. The California test is strict: "as a condition of liability, it must also be shown that there is such a unity of interest and ownership that the individuality of the subsidiary as a distinct entity has ceased." United National Records, Inc. v. M.C.A., Inc., 616 F.Supp. 1429 (N.D.Ill.1985) (applying California law), quoting United States v. Dean Van Lines, Inc., 531 F.2d 289, 291 (5th Cir.1976) (applying California law). See also Institute of Vetinary Pathology, 172 Cal.Rptr. at 78. Bentler has made no such showing, and the district court correctly granted BAC summary judgment on the pendent state claims.
 
 IV
 
 21
 The National Bank Act's employment at will provision preempts Bentler's contract and tort claims against the Bank. 12 U.S.C. § 24 (Fifth) (1982). That statute states that a national bank has power "to elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places." Id. (emphasis added).
 
 
 22
 Appellant maintains that the employment at will clause is inapplicable because the Bank did not comply with the provisions of the National Bank Act. In particular, he argues that he was constructively discharged, not dismissed. In addition, he claims that his termination was not authorized by the Bank's board of directors. Both of these contentions lack merit.
 
 
 23
 It makes no difference whether an employee is dismissed by his employer or constructively discharged. "The purpose of the provision in the National Bank Act was to give those institutions the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust." Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 526 (9th Cir.1989). Drawing a distinction between dismissal and constructive discharge would unnecessarily thwart that purpose.
 
 
 24
 The cases cited by appellant are not persuasive. In Armano v. Federal Reserve Bank of Boston, 468 F.Supp. 674 (D.Mass.1979), the court interpreted the Federal Reserve Act's employment at will provision and decided that it precluded plaintiff's contract claim, but not his claim for emotional distress. Armano applies to a different, although analogous statute, and its reasoning has been rejected by this court. In Mackey, we ruled that the National Bank Act preempts both contract and tort claims. 867 F.2d at 520.
 
 
 25
 Bentler's reliance on Potter v. Village Bank of New Jersey, 225 N.J.Super. 547, 543 A.2d 80, cert. denied, 113 N.J. 352, 550 A.2d 462 (1988), is similarly misplaced. That case adopted a whistleblower exception to the New Jersey Bank Act's employment at will provision. Federal preemption issues were simply not at issue there.
 
 
 26
 In Mackey we noted that a board of directors could assign performance of its duty to dismiss bank officers. 867 F.2d at 525; see 12 C.F.R. § 7.4425 (1987). The supervisors who discharged Bentler were authorized by the Bank's board of directors to dismiss Bank officers. Accordingly, his dismissal complied with the requirements of the National Bank Act, and his pendent state law claims are preempted.
 
 V
 
 27
 The district court correctly granted summary judgment to BAC because it did not employ Bentler, and it correctly granted partial summary judgment to the Bank because the National Bank Act preempted Bentler's common law claims.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3