Filed 10/22/13  Redd v. Ocwen Loan Servicing CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANN REDD<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>     Defendant and Respondent. | A137112<br><br>(Contra Costa County<br>Super. Ct. No. C12-00747) |

After receiving notice her mortgage was in default, Ann Redd sued the loan servicer, Ocwen Loan Servicing, LLC (Ocwen), seeking modification of her mortgage loan and other relief.  The trial court sustained Ocwen's demurrer to the complaint on statute of limitations grounds, without leave to amend.  Redd appeals from the ensuing judgment of dismissal.  We affirm.

## I.  BACKGROUND

**A.  *Complaint***

Redd sued Ocwen in pro. per. on March 27, 2012, alleging in relevant part as follows:

On January 22, 2007, Ocwen opened a mortgage loan account for Redd in the amount of $496,000 secured by Redd's property in Antioch, California.  Redd signed a promissory note, trust deed, and other instruments evidencing this account.[1]  Just after the mortgage account was opened, Redd notified Ocwen of errors in the terms of the account

---

[1] None of the loan documents were attached as exhibits to the complaint.

and in the computation of the principal loan balance, and "requested a rectification." Ocwen referred Redd to previous servicers of the loan and refused to accommodate any changes to the loan balance or any other terms of the account. Redd repeatedly notified Ocwen of the mistake and errors in the terms of the contract and sought a reduction in the principal loan balance. She also sought a modification of the terms of the promissory note. Ocwen refused these requests.

Approximately a week before filing suit, Redd had received a "Notice of Default" from Ocwen. She contacted Ocwen and was informed no modification to the material terms of the contract would be granted. A representative of Redd contacted Ocwen's "Relationship Manager" to protest the principal loan balance was incorrect, and previous loan servicers including Ocwen had made serious, admitted errors in servicing the account. Redd's agent requested a loan modification and reformation of the loan contract, especially in view of the fact the market value of the property had fallen drastically from about $650,000 in December 2007 to about $240,000 by December 2011. Ocwen's representative rebuffed this request, stating " 'there would be no loan modification due to loan owner restrictions,' " and only a short sale or deed in lieu of foreclosure would be permissible to stave off a foreclosure sale of the property.

The complaint further alleged Ocwen or its predecessors in interest engaged in a pattern and practice of (1) collecting illegal, improper, and excessive fees and charges in connection with the servicing of the loan, and in connection with delinquent payments; and (2) improper posting of payments, and rendering of accounts and payment histories.

Due to the errors made in the calculation of the principal loan balance and other relevant terms, the promissory note Redd signed did not reflect the actual agreement of the parties. Ocwen knew or should have known its failure to exercise due diligence preventing such mistakes in the written contract and in ensuring the written contract reflected the mutual agreement of the parties "were potentially damaging" to Redd, and she did suffer damages as a result.

Based on these allegations of fact, Redd alleged four causes of action against Ocwen: (1) "Modification of Contract"; (2) "Reformation of Contract"; (3) "Negligence"

(based on Ocwen's asserted miscalculation of the loan balance, incorrect preparation of the documents evidencing the loan agreement, and improper posting of principal payments); and (4) "Injunctive Relief." The prayer for relief sought general and special damages as well as an "Order of Modification, Reformation or Recission of the Contract," and a temporary injunction against further steps by Ocwen to foreclose on the property pending resolution of the lawsuit.

## B. *Demurrer*

Ocwen demurred to the complaint on the following grounds: (1) Redd's contract causes of action were barred by the four-year statute of limitations for written contracts in that she alleged she knew the contract did not conform to the parties' agreement and began seeking to have it reformed "just after" the mortgage account was created in January 2007, yet she did not file suit until March 27, 2012; (2) Redd's negligence claim failed because Ocwen was not the originator of the loan and it owed Redd no duty of care in its role as a servicer of the loan; (3) Redd's purported cause of action for injunctive relief failed because a request for injunctive relief is not an independent cause of action, and none of Redd's substantive causes of action stated a viable claim.

Ocwen's notice of demurrer notified Redd consistent with local rules that the parties could obtain the trial court's tentative ruling from the court Web site beginning at 1:30 p.m. the day before the hearing and the tentative ruling would become the court's ruling *unless* by 4:00 p.m. on the court day preceding the hearing, counsel (1) called the department rendering the decision to request argument, and (2) advised the opposing counsel or unrepresented parties of his or her decision to appear. The demurrer notice stated: "Failure to timely advise the Court and counsel will preclude counsel from arguing the matter." The notice of demurrer accurately tracked the language of Superior Court of Contra Costa County, Local Rules, rule 7.D.[2]

---

[2] We have taken judicial notice of rule 7.D. of the Superior Court of Contra Costa County Local Rules on our own motion. (Evid. Code, § 452, subd. (e).)

In her opposition to the demurrer, Redd argued she had adequately pled each cause of action. In the alternative she sought leave to amend the complaint but did not specify how she could amend to overcome the issues cited by Ocwen as the basis for its demurrer.

## C. *Demurrer Proceedings*

By stipulation and order, the hearing on Ocwen's demurrer was rescheduled from June 12, 2012 to July 24, 2012. The trial court posted its tentative ruling sustaining the demurrer on statute of limitations grounds, without leave to amend, on July 23, 2012. The tentative ruling dismissed Redd's purported injunctive relief cause of action since the remedy was not in itself a cause of action and all of Redd's other causes of action were defective. Receiving no timely notice of opposition to the tentative ruling from either party, the trial court adopted the tentative ruling as its order on the demurrer on July 24, without a hearing. Although Redd appeared on July 24, she was not permitted to argue.

## D. *Motion for Reconsideration*

Redd timely moved under Code of Civil Procedure section 1008 for the trial court to reconsider its order on the grounds of new facts and circumstances. She asserted she became aware in May 2012 of additional evidence in the exclusive possession of the coborrower and coowner of the property, Harrison Oyedele, who she averred "was out of town around the time this case started and could not have participated as a party" at that time. She stated she had "only recently" been made aware by Oyedele that "there was a mortgage contract modification done previously on our mortgage account," which she believed occurred "sometime in 2009." This claim was supported by Oyedele's declaration in which he stated Ocwen granted a loan modification to him and Redd "[s]ometime in 2009." Ocwen allegedly offered the loan modification after it "admitted errors having been made in the history of the account." According to Oyedele, the modification did not reduce the mortgage principal "contrary to [his] expectations and tacit promises *by Ocwen's* agents and principals." He averred he contacted Ocwen "several times about the need to further adjust the mortgage principal to reflect the actual amount"—to no avail—but he and Redd continued to make monthly payments on the

4

loan. He also states in his declaration he was "flabbergasted" to learn in November 2011 that Ocwen had extended the term of the loan to 40 years without any disclosure, and that he demanded Ocwen adjust the loan to a 30-year mortgage consistent with his and Redd's "previously expressed desire," also to no avail. No exhibit was attached to Oyedele's declaration evidencing a 2009 loan modification by Ocwen. Although Redd's declaration is indefinite about the exact date when she became aware of the alleged 2009 loan modification, it can be inferred from her moving papers she learned of this in May 2012.[3]

In her reply papers on the motion for reconsideration, Redd also indicated she wished to amend her complaint to join Oyedele as a plaintiff and to join several other persons and entities as defendants "who conspired to deplete the equity in [her] home." She attached the first page of a draft first amended complaint purporting to assert eight causes of action—based on federal as well as state law—against eight persons and entities including Ocwen.[4] At the hearing on the motion, Oyedele appeared and sought to be recognized for the purpose of making an oral motion to be joined as a party plaintiff. The trial court denied the request and denied Redd's motion for reconsideration by order entered October 10, 2012.

The trial court entered a judgment of dismissal on October 25, 2012, and this timely appeal followed.

## II. DISCUSSION

Redd contends the trial court erred in dismissing her complaint without leave to amend because (1) she had a statutory right to file a first amended complaint under Code

---

[3] Her moving papers state Oyedele brought some additional material facts to her attention "sometime in May 2012," and that she learned other new facts from specified documents Oyedele received from Ocwen on July 16, 2012, which were attached to his declaration. The documents she referred to have nothing to do with a 2009 loan modification. All refer to events occurring on or before Ocwen became the loan servicer on Redd's account in January 2007.

[4] Redd admits she had not completed drafting the proposed complaint at that point.

5

of Civil Procedure section 472[5] and other statutes, (2) there was a reasonable possibility an amendment would have cured any defect in her complaint, and (3) her claims were not time-barred due to the loan modification made in 2009 and Ocwen's failure to honor it. She contends the court also erred by denying her motion for reconsideration, and rejecting Odeyele's oral motion to be joined in the action as an indispensable party.

## A. *Standard of Review*

In reviewing a dismissal following the sustaining of a demurrer without leave to amend, the appellate court applies two separate standards of review. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) First, the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. (*Ibid*.) For this purpose, we accept as true the properly pleaded material factual allegations of the complaint, along with any other facts subject to judicial notice. (*Ibid*.) The judgment must be affirmed if any one of the grounds stated in the demurrer is well taken, regardless of the grounds cited by the trial court in reaching its decision. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Williams v. Pacific Mutual Life Ins. Co.* (1986) 186 Cal.App.3d 941, 951.)

Second, where the demurrer is sustained without leave to amend, reviewing courts determine whether the trial court abused its discretion in doing so. (*Hernandez v. City of Pomona*, *supra*, 49 Cal.App.4th at p. 1497.) If there is a reasonable possibility the defect can be cured by amendment, the trial court will have abused its discretion in denying leave to amend. (*Id*. at p. 1498.) The plaintiff bears the burden of proving such a reasonable possibility exists. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## B. *Demurrer Ruling*

As an initial matter, we reject Redd's assertion the trial court erred by failing to recognize her asserted right to amend her complaint under Code of Civil Procedure

---

[5] Code of Civil Procedure section 472 states in relevant part: "Any pleading may be amended once by the party of course, and without costs, *at any time before the answer or demurrer is filed, or after demurrer and before the trial of the issue of law thereon*, by filing the same as amended and serving a copy on the adverse party . . . ." (Italics added.)

6

section 472. The right to file an amended complaint under section 472 ends when "the trial of the issue of law" raised by the demurrer begins. Under this statute, Redd's right to amend as a matter of course ended at the very latest when she failed to file or serve an amended pleading before the date and time scheduled for the hearing on Ocwen's demurrer. (See *Barton v. Khan* (2007) 157 Cal.App.4th 1216, 1221 [under § 472, when a demurrer is filed, "a plaintiff has a right to amend his or her pleading . . . up to the time of the hearing on the demurrer"].)

The fact the hearing on the demurrer was taken off calendar due to Redd's failure to give timely notice of her desire to oppose the tentative ruling did not extend her time to amend under Code of Civil Procedure section 472. There is no indication in the record Redd had an amended complaint ready to be filed on the hearing date, or that she requested leave to file such a pleading when she appeared for the hearing. Redd had nearly three full months after the filing of Ocwen's demurrer in which to file an amended pleading. The fact settlement discussions took place between Redd and Ocwen before the date scheduled for the hearing on the demurrer did not excuse Redd from filing an amended pleading or giving notice of her desire to contest the tentative ruling. There was no evidence Ocwen intentionally misled Redd into believing its demurrer would be withdrawn or deferred if no settlement was finalized before the hearing. Section 472 therefore does not assist Redd. Equally, no other statute or combination of statutes afforded Redd any absolute statutory right to amend her complaint. The trial court's decision denying Redd leave to amend is subject to appellate review only for abuse of discretion.[6]

---

[6] Redd's objections to the trial court's demurrer ruling are set forth in a somewhat confusing fashion in her briefs. To the extent she is also challenging the dismissal of her negligence and injunctive relief causes of action, we find no error. Redd's negligence claims as alleged were barred by the two-year statute of limitations for negligence and by the absence of a common law duty of care by a loan servicer to a mortgagor. (Code Civ. Proc., § 335.1; *Saldate v. Wilshire Credit Corp.* (E.D.Ca. 2010) 711 F.Supp.2d 1126, 1132–1133 [applying California law].) Her injunctive relief claim failed because injunctive relief is an equitable remedy not a cause of action. (*Wong v. Jing* (2010)

When the trial court ruled on Ocwen's demurrer it had no information from Redd concerning how she might be able amend her complaint to address the statute of limitations issue, or any other issue. The only sentence in Redd's memorandum of points and authorities in opposition to the demurrer that mentioned or referred to amendment of the complaint was the last sentence of the document: "In the alternative, Plaintiff respectfully requests leave to amend or amplify the Complaint." The memorandum, filed May 31, 2012, otherwise rejected all of the grounds stated in Ocwen's demurrer, defended the complaint exactly as pled, and was entirely silent as to how Redd might amend or amplify her pleading to survive a demurrer. Since the burden was on Redd to show "in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of [her] pleading" (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 (*Goodman*)), it was not surprising the trial court denied Redd leave to amend.

This court is in a different position. Code of Civil Procedure section 472c, subdivision (a) provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." Under section 472c, this court may consider amendments to the complaint that were not proposed to the trial court before it decided the demurrer, as the Supreme Court did in *Goodman*. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).)

However, it continues to be the plaintiff's burden on appeal to show how a proposed amendment would change the legal effect of the pleadings. (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.) Redd must set forth factual allegations that sufficiently state all required elements of the challenged causes of action, and the allegations "must be factual and specific, not vague or conclusionary." (*Rakestraw*, *supra*, 81 Cal.App.4th at pp. 43–44.) "Where the appellant offers no allegations to

189 Cal.App.4th 1354, 1360, fn. 2.) She has not suggested how these defects could be cured by amendment.

8

support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Id*. at p. 44.) However, we are not concerned at this stage with whether the plaintiff will have difficulty in proving the allegations of the complaint. (*Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 897.)

In essence, Redd contends she can amend her complaint to allege (1) Ocwen agreed to modify the mortgage contract sometime in January 2009 to lower the principal balance as well as the interest rate but it only adjusted the interest rate and did not reduce the principal amount owing, and (2) she and Oyedele made repeated demands to Ocwen to correct the problem but Ocwen ignored their demands. She states she first discovered the errors sometime in February 2009. She maintains she was actually seeking judicial redress in her original complaint "for the *modified* mortgage contract granted to [her] and Oyedele sometime in February 2009," even though the complaint makes no mention of a 2009 modification and instead alleges unequivocally Ocwen refused to modify the January 2007 loan account in in any respect.

Redd's allegations concerning the modification agreement fail to allege with specificity whether Ocwen's promise or agreement to reduce the principal amount of the loan was oral or written.[7] If the agreement was oral, Redd's proposed amended complaint would still be subject to demurrer on statute of limitations grounds. The statute of limitations for oral agreements is two years. (Code Civ. Proc., § 339, subd. (1).) She states she became aware Ocwen had not reduced the principal amount "sometime in February, 2009," but she did not file her complaint until March 27, 2012—

---

[7] We note Redd's original complaint did not allege she had any contractual relationship with Ocwen, only that she had a mortgage account serviced by Ocwen. The lender shown on her 2007 deed of trust was "DB Home Lending LLC." It is not clear under these circumstances how Redd could allege a viable breach of contract cause of action *against Ocwen* for failing to reduce the principal amount of her loan. We will nonetheless assume for purposes of analyzing the statute of limitations issue that Ocwen was a proper defendant on that theory.

more than two years after discovering Ocwen's breach. The record before us strongly suggests Redd is alleging an oral or implied promise to reduce the principal, not an express, contractual promise. Oyedele's declaration in support of Redd's motion for reconsideration states in reference to the 2009 modification, "the mortgage principal was not reduced, contrary to my expectations and *tacit* promises *by Ocwen's* agents and principals." (Italics added.) He makes no reference to a written contract to that effect, and attaches no document evidencing such a contract. In her reply brief on appeal, Redd asserts the 2009 modification on which she proposes to base her amended complaint "did not reflect the actual *telephonic* agreements of the parties."

An amended complaint based on an oral promise allegedly breached in January or February 2009 would not only be subject to demurrer based on the statute of limitations, it would also be defective under the statute of frauds which, as Redd acknowledges, requires real estate transactions, including real estate loan modifications, to be in writing. (See *Secrest v. Security National Mortgage Loan Trust* 2002-2 (2008) 167 Cal.App.4th 544, 552–553 [statute of frauds requires a real estate loan modification agreement to be in a writing signed by the party to be charged].)

While Redd also mentions in her reply brief that Ocwen sent her and Oyedele a written loan modification agreement to sign, she does not say whether the written agreement included a reduction in the principal amount of the loan.[8] In a paragraph discussing the existence of a written modification agreement, she states Ocwen "cannot deny . . . there was a change in the monthly payment due, the interest rate and the term of the mortgage contract [in 2009]," implying by omission these are the only modifications evidenced by a written agreement.

In our view, Redd fails to meet her burden of establishing she can state a legally viable cause of action based on Ocwen's failure to modify the principal amount of her loan. While Redd makes vague and confusing reference in passing to other alleged

---

[8] Redd states she and Oyedele signed the document and returned it to Ocwen by facsimile, but does not explain why the original document is apparently no longer in her possession.

wrongs—unspecified errors made by previous servicers of her account before 2007, and errors made by Ocwen before the asserted 2009 loan modification—she fails to establish with specificity how she can allege viable causes of action not dependent on Ocwen's alleged promise to reduce the principal amount of her loan. We decline to consider new allegations raised for the first time in Redd's reply brief, including inchoate claims that she can amend to state causes of action under recently enacted mortgage reform legislation.

## C. *Motion for Reconsideration*

The trial court's ruling on Redd's motion for reconsideration is reviewable on appeal from the judgment of dismissal. (Code Civ. Proc., § 1008, subd. (g).) The trial court did not abuse its discretion in denying the motion. Redd failed to establish why she could not have alleged all of the facts she learned through Oyedele either in her original complaint or in an amended complaint filed in the four months between the filing of that complaint and the date set for the hearing on Ocwen's demurrer. Thus, she did not explain why she could not have contacted Oyedele by telephone to learn the relevant facts before she filed the complaint in March 2012, why she failed to amend the complaint after Oyedele returned to California in May 2012, or why she failed to amend the complaint after Oyedele learned of unspecified additional facts on July 16, 2012 (which pertained in any event solely to events before Ocwen took over servicing of the loan). Facts of which a party seeking reconsideration was aware at the time of the original ruling are not "new or different facts," that would support a trial court's grant of reconsideration. (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468.) Even if Redd had established the 2009 modification was a "new or different fact[]," she failed to show she could state a viable cause of action based on it, for the reasons discussed *ante*. Redd's motion for reconsideration was properly denied.

## D. *Oyedele's Oral Motion*

Assuming Redd has standing to appeal the denial of Oyedele's motion to intervene, the appeal is not well taken. If Redd believed Oyedele was a necessary party, she could have obtained his authority to name him as a coplaintiff in her original

11

complaint, she could have amended her complaint to add him as a party plaintiff after his return to California in May 2012, or he could have filed and served a complaint in intervention under Code of Civil Procedure section 387. By the time he did seek to intervene by oral motion at the hearing on Redd's motion for reconsideration, there was no point in allowing his intervention because the court had already sustained Ocwen's demurrer without leave to amend. The trial court did not err in denying Oyedele's motion.

## III. DISPOSITION

The judgment is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Sepulveda, J.[*]


_____

[*] Retired Associate Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.